**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MIGUEL OSMAR RIVAS,
              *Plaintiff-Appellant,*

v.

RAIL DELIVERY SERVICE, INC., a
California corporation,
              *Defendant-Appellee.*

No. 03-55447

D.C. No.
98-0392 MRP

TOBIAS RENTERIA, individually and
on behalf of all others similarly
situated,
              *Plaintiff-Appellant,*

v.

K&R TRANSPORTATION INC., a
California corporation; ADRIANA
VASQUEZ; ROBERT A. CURRY, SR.,
              *Defendants-Appellees.*

No. 03-55452

D.C. No.
CV 98-0290 MRP

SALVADOR RODRIGUEZ,
              *Plaintiff-Appellant,*

v.

RWA TRUCKING COMPANY, INC.;
ANDY ASMAN,
              *Defendant-Appellees.*

No. 03-55450

D.C. No.
CV 98-0393 MRP

12687

WILFREDO PINEDA, individually and
on behalf of all similarly situated,
          *Plaintiff-Appellant,*

          v.

HARBOR EXPRESS INC., a California
corporation,

          *Defendant-Appellee.*

No. 03-55449

D.C. No.
CV 98-0397 MRP

OPINION

Appeals from the United States District Court
for the Central District of California
Mariana R. Pfaelzer, District Judge, Presiding

Argued and Submitted
November 3, 2004—Pasadena, California

Filed September 8, 2005

Before: A. Wallace Tashima, Raymond C. Fisher, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tashima

**COUNSEL**

Stephen Glick, Kumetz & Glick, Los Angeles, California, for plaintiffs-appellants.

Greg P. Stefflre, Stefflre & Sanders, Long Beach, California, for defendants-appellees Rail Delivery Service, Inc., Harbor Express, Inc. and RWA Trucking, Inc.

Neil S. Lerner, Sands Lerner, Los Angeles, California, for defendant-appellee K&R Transportation, Inc.

## OPINION

TASHIMA, Circuit Judge:

These consolidated appeals involve four cases in which the district court granted a permanent injunction under the Interstate Commerce Commission Termination Act ("ICCTA"). The district court found that Defendant motor carriers had entered into past contracts with Plaintiffs that did not comply with one of the Truth-in-Leasing regulations promulgated pursuant to the Motor Carrier Act; the injunction directed Defendants to comply. Plaintiffs in all four cases appeal the court's injunction as too narrow, claiming that it should have required Defendants' compliance with four additional regulatory provisions. Plaintiffs also appeal the court's denial of attorneys' fees. In addition, Plaintiff Renteria appeals a grant of summary judgment to Defendant K&R Transportation on Renteria's claims based on violations of the California Insurance Code. We conclude that Plaintiffs lacked standing because: (1) the regulatory violations for which they sought injunctive relief caused them no injury, depriving them of Article III standing; and (2) the ICCTA would have an impermissible retroactive effect if it conferred standing to bring claims for damages on the basis of contracts executed before the ICCTA's effective date. We therefore vacate the district court's judgments and remand for dismissal of the cases for lack of jurisdiction.

## Factual and Procedural Background

Plaintiffs are owner-operators who have contracted with Defendant motor carriers to transport goods for Defendants.

Plaintiffs and Defendants entered into written agreements at different times between 1991 and 1995. In December 1997, Plaintiffs filed complaints in Los Angeles Superior Court alleging that: (1) Plaintiffs were employees of Defendants by operation of law under the requirements imposed by the ICCTA and the Truth-in-Leasing regulations, notwithstanding contractual provisions identifying the owner-operators as independent contractors, and that Defendants had unlawfully denied Plaintiffs the benefits of employees; (2) Defendants failed to comply with federal Truth-in-Leasing regulations, thereby breaching fiduciary duties to Plaintiffs; and (3) Defendants sold insurance to Plaintiffs without a license permitting them to do so under California law.

These cases were removed to federal district court. The district court twice denied motions to remand the cases to state court. The district court ruled that there is no private cause of action for damages under the ICCTA for violations of the Truth-in-Leasing regulations unless the plaintiff first obtains an agency order. This ruling eliminated Plaintiffs' ICCTA claims for damages, leaving ICCTA claims for injunctive relief and state law claims. It then granted summary judgment for Defendants on Plaintiffs' employment status claims, concluding that compliance with federal law did not preclude owner-operators from being independent contractors. The court also granted summary judgment for Defendants on Plaintiffs' unlawful sale of insurance claims.

The cases proceeded to trial on Plaintiffs' remaining ICCTA claims for injunctive relief to remedy violations of the Truth in-Leasing regulations. The court first tried the issue of whether the written agreements between Plaintiffs and Defendants substantially complied with the regulations. The court determined that the Defendants failed substantially to comply with 49 C.F.R. § 376.12(c)(1), which requires leases to state that the motor carrier assumes complete responsibility for the operation of the hauling equipment for the duration of the lease. It granted Plaintiffs injunctions under 49 U.S.C.

§ 14704(a)(1). The judgments prohibited each Defendant from using equipment it did not own to haul goods unless it entered into a written agreement that complied with 49 C.F.R. § 376.12(c)(1) and denied Plaintiffs' requests for attorneys' fees.

## Legal Background

In 1979, the Interstate Commerce Commission ("ICC") promulgated the Truth-in-Leasing regulations, which exist in substantially the same form today at 49 C.F.R. Part 376. *Owner-Operator Independent Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 270 F. Supp. 2d 990, 992 (S.D. Ohio 2003) (citing *Global Van Lines, Inc. v. ICC*, 627 F.2d 546, 549 (D.C. Cir. 1980)). Until 1996, the ICC could bring civil actions to enforce the regulations, which require that leases between motor carriers and owner-operators contain certain provisions. *Id.* at 992-93. The ICCTA terminated the ICC as an agency as of January 1, 1996. Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (1995), codified at 49 U.S.C. § 10101 *et seq.* The ICCTA allows owner-operators to bring private causes of action against motor carriers for some violations of the Motor Carrier Act and its attendant regulations, including the Truth-in-Leasing regulations. 49 U.S.C. § 14704(a); *see Arctic Express*, 270 F. Supp. 2d at 993.

## Analysis

This appeal raises two standing issues. Although the parties did not fully address these issues, we have an independent obligation to examine our own and the district court's jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (internal quotation marks omitted). We review

questions of standing de novo. *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1196 (9th Cir. 2004).

## I.   *Article III Standing*

**[1]** In order to have Article III standing, a plaintiff must have suffered an injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[1] A plaintiff demonstrates injury in fact by pointing to "some threatened or actual injury resulting from the putatively illegal action." *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111 (9th Cir. 1999) (quoting *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988)). Plaintiffs concede that the regulatory violations for which they sought injunctive relief caused them no injury. Because the Truth-in-Leasing violations caused them no injury, Plaintiffs did not have Article III standing to bring suit against Defendant motor carriers for those violations.

**[2]** Defendant motor carriers appear to agree with the district court's conclusion that a plaintiff need not demonstrate injury in order to obtain an injunction to remedy violations of the Truth-in-Leasing regulations. *See* 49 U.S.C. § 14704(a)(1) ("A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103."). A federal statute, however, cannot confer standing on plaintiffs who do not meet Article III requirements. *See Preston v. Heckler*, 734 F.2d 1359, 1364 (9th Cir. 1984) ("The test for standing under

---

[1]To satisfy Article III,

> a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

a statute may be more rigorous but not more lenient than the article III requirements."). The district court concluded that Plaintiffs had standing because their original complaints alleged injury. The injury alleged in the complaints, however, related to alleged California Insurance Code violations, Plaintiffs' theory of "statutory employment" (under which compliance with Truth-in-Leasing regulations made Plaintiff owner-operators employees by operation of law, rendering Defendants' treatment of them as independent contractors unlawful), and allegations that Defendants unlawfully extracted hidden charges from Plaintiffs' earnings in violation of the Truth-in-Leasing regulations. The district court thus would have had federal question jurisdiction (if Plaintiffs had ICCTA standing to bring suit based on pre-1996 contracts) over Plaintiffs' claims relating to unlawful denial of employment benefits and unlawful withholding of funds because Plaintiffs alleged that they sustained damages as a result of the regulatory violations underlying those claims. Jurisdiction over those claims could not, however, confer jurisdiction over distinct federal claims for which Plaintiffs could demonstrate no injury. The district court thus should have dismissed Plaintiffs' claims for injunctive relief to remedy Truth-in-Leasing violations when Plaintiffs conceded a lack of injury. *Cf. Lujan*, 504 U.S. at 560.

## II. *ICCTA Standing*

[3] In order to determine the district court's proper course of action on remand, we must determine whether Plaintiffs had standing under the ICCTA to bring the damages claims for which they did allege injury. Because the written agreements underlying the claims were executed before ICCTA's effective date of January 1, 1996, we conclude that the damages claims would have an impermissible retroactive effect.[2]

---

[2]Because Plaintiffs lacked Article III standing to bring their claims for injunctive relief, we need only decide whether their ICCTA damages claims operate retroactively.

Plaintiffs therefore lacked standing to bring those claims. Because Plaintiffs' ICCTA claims were their only federal law claims, we hold that the district court lacked jurisdiction. The district court should therefore vacate its judgments and dismiss the case for lack of jurisdiction, remanding Plaintiffs' state law claims to state court.

**[4]** In the only Court of Appeals opinion to address the question before us, the Eighth Circuit held that ICCTA's private right of action applies only to agreements executed after ICCTA's effective date of January 1, 1996. *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 339 F.3d 1001, 1007-09 (8th Cir. 2003); *but see Arctic Express*, 270 F. Supp. 2d at 994-95 (reaching the opposite conclusion). The *New Prime* court concluded that if ICCTA private rights of action for damages could be based on agreements executed before ICCTA's effective date then the statute would have an impermissible retroactive effect. 339 F.3d at 1007.

**[5]** *New Prime* first noted that, because Congress had not expressly prescribed the ICCTA's reach, the court would have to determine whether the statute would have a retroactive effect in that it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). The court concluded that ICCTA would have a retroactive effect because it permits individual owner-operators to bring suits that previously only the ICC could bring. *Id.* ICCTA thus alters motor carriers' substantive rights, the court reasoned, by expanding the class of plaintiffs eligible to bring claims against them. *Id.* The court went on to note that plaintiff owner-operators would likely be motivated by their own potential financial gain, increasing potential liability for defendant motor carriers. *Id.*

*New Prime* analogized to the Supreme Court's decision in *Hughes Aircraft Co. v. United States*, 520 U.S. 939 (1997).

*Hughes* held that a 1986 amendment to the False Claims Act would have an impermissible retroactive effect if applied to pre-1986 conduct. *Id.* at 941-42, 950. The amendment at issue removed a bar to qui tam suits under the False Claims Act, extending "an FCA cause of action to private parties in circumstances where the action was previously foreclosed." *Id.* at 949. The *Hughes* court observed that "[i]n permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially create[d] a new cause of action, not just an increased likelihood that an existing cause of action will be pursued." *Id.* at 950.

**[6]** We find persuasive *New Prime*'s conclusion that in this case, as in *Hughes*, retroactively expanding the universe of potential plaintiffs would have an impermissible retroactive effect. Because application of the ICCTA to pre-1996 agreements would increase Defendants' potential liability, the statute has a retroactive effect. *See New Prime*, 339 F.3d at 1007. In the absence of evidence of congressional intent to create such an effect, we apply a presumption that the statute does not operate retroactively. *See Landgraf*, 511 U.S. at 280. Because there is no evidence that Congress intended for the ICCTA to apply to pre-1996 contracts, we hold that ICCTA's private right of action for damages applies only to contracts executed after its enactment.

## Conclusion

**[7]** Accordingly, we vacate the district court's judgments and remand these cases to the district court with directions that it remand these cases to state court. Each party shall bear his or its own costs on appeal.

**VACATED and REMANDED with directions.**